IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:19-cv-00573 (JEB) |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Judicial Watch, Inc., by counsel and pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, respectfully submits this memorandum of points and authorities in opposition to the Motion for Partial Summary Judgment of Defendant U.S. Department of Justice. As grounds thereof, Plaintiff states as follows:

**I.      Factual Background.**

This lawsuit involves a FOIA request directed to the FBI for records of communications and meetings between former FBI general counsel James Baker and Perkins Coie partner Michael Sussmann. Compl. ¶ 5.[1] The FBI has asserted a privacy *Glomar* in conjunction with FOIA Exemptions 6 and 7(C) and has refused to confirm or deny the existence of any records. Plaintiff respectfully submits that a *Glomar* response is unwarranted and seeks an order requiring the FBI to process Plaintiff's FOIA request.

---

[1] The FBI asserted a privacy *Glomar* for parts 1 and 2 of the request but is currently processing responsive records in response to part 3 of the request.

The genesis of this FOIA request was a meeting held in September 2016 between Baker and Sussmann, a lawyer for the Hillary Clinton campaign and the Democratic National Committee.  *See* Exh. A (Kimberly A. Strassel, "Who Is Michael Sussmann?," *Wall Street Journal* (Oct. 11, 2018)).  The meeting, occurring shortly before the 2016 election, drew scrutiny because Sussmann's firm also had been retained by the Clinton campaign and the DNC to pay research firm Fusion GPS and Christopher Steele to compile a "dossier" alleging Donald Trump and the Russian government were colluding to hijack the presidential election.  *Id*.  At the meeting, Sussmann handed over to Baker documentation, including an electronic storage device, purportedly showing a link between a Russian bank and a computer server in Trump Tower.  *See* Exh. B (Jeff Carlson, "Baker Testimony Reveals Perkins Coie Lawyer Provided FBI With Information on Alfa Bank Allegations," *The Epoch Times* (Jan. 21, 2019).  The meeting occurred shortly before Baker would review and approve the FBI's application for a FISA warrant to surveil Carter Page.  *See* Exhibit C (Andrew C. McCarthy, BALL OF COLLUSION at 263 (2019).  *The New York Times* reported on Oct. 31, 2016, that "F.B.I. officials spent weeks examining computer data showing an odd stream of activity to a Trump Organization server and Alfa Bank" but "ultimately concluded that there could be an innocuous explanation, like a marketing email or spam, for the computer contacts."  Eric Lichtblau and Steven Lee Myers, "Investigating Donald Trump, F.B.I. Sees No Clear Link to Russia," *N.Y. Times* (Oct. 31, 2016) (https://www.nytimes.com/2016/11/01/us/politics/fbi-russia-election-donald-trump.html).

The Baker/Sussmann meeting was the focus of subsequent testimony by Baker before the U.S. House Judiciary and Oversight committees in October 2018.  *See* Exhs. D and E (Interview of James A. Baker, Oct. 3 and Oct. 18, 2018).  Baker testified that Sussmann said "he had cyber

experts that had obtained some information that they thought they should get into the hands of the FBI." The information provided by Sussmann appeared to be substantial:

> Mr. Baker: It was like — my recollection was it was a stack of material I don't know maybe a quarter inch half inch thick something like that clipped together, and then I believe there was some type of electronic media, as well, a disk or something.

Exh. D at 107. Baker also stated that the information from Sussmann was "unrelated to the [Steele] dossier, it's another investigative matter." *Id*. at 45. After some consultation with and approval from a lawyer from the FBI's Office of General Counsel, Baker acknowledged that Sussmann's information related to the FBI's Trump–Russia investigation. *Id*. at 45-46.

Baker also testified that Sussmann had shared the same information with the media, stating that Sussmann had told him "some elements of the press had this information as well and were going to publish something about it." *Id*. at 107. Baker stated that The *New York Times* had also been in possession of Sussmann's information:

> Mr. Baker: He was the source — he told me the New York Times was aware of this. We, the FBI, went to the *New York Times* and then started a series of conversations with them to try to get them to slow down

*Id*. at 116-17.

**II.    Procedural Background and Legal Standard.**

Plaintiff does not dispute Defendant's recitation of the procedural background of this case. *See* Defendant's Memorandum of Points and Authorities in Support of Its Motion for Summary Judgment ("Def's Mem.") at 2-3.

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that would change the outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (Only disputes over facts that

might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.).  FOIA cases typically and appropriately are decided on motions for summary judgment.  *See Defenders of Wildlife v. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); *Bigwood v. U.S. Agency for Int'l Dev*., 484 F. Supp. 2d 68, 73 (D.D.C. 2007).  In FOIA cases, the agency bears the ultimate burden of proof.  *See DOJ v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989).

## III. Defendant's Glomar Response is Unwarranted.

Plaintiff does not dispute Defendant's recitation of case law (Def's Mem. at 6-11) setting forth the standards for a *Glomar* response under Exemption 6 and Exemption 7(C).  Hence, the first issue is whether production of records in this case would "constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).[2]

In this case, no cognizable privacy interest is apparent.  Sussman, a lawyer who may or may not have been acting on behalf of an unspecified client, delivered documents to a top FBI official.  There is no indication that this meeting was held with the intent of keeping Sussmann or his unspecified client's identity undisclosed.  On the contrary, the sworn testimony of Baker, the former FBI general counsel, confirms that Sussmann was sharing the same documents with the media.  *See* Exh. D at 106, 116-17.  Rather than privacy, this confirms that Sussmann was seeking to obtain attention for his activities.  Hence, this is far from typical case where a FOIA request "is made for FBI investigative records regarding a particular individual, the FBI's mere acknowledgment that it possesses responsive records associates the individual named in the request with suspected criminal activity." *Citizens for Responsibility and Ethics in Wash.*

---

[2] Defendant's claim (Def's Mem. at 12) that Plaintiff should have somehow anticipated the *Glomar* response and submitted evidence in the FOIA request of the "public interest" supporting disclosure lacks any statutory or logical basis.

*(CREW) v. DOJ*, 746 F.3d 1082, 1091 (D.C. Cir. 2014).  Sussmann had no expectation of "personal privacy," as he was actively seeking publicity for himself and the information he wanted to share.

In any event, the public interest in disclosure of the existence of records is manifest.  In contrast to any privacy interest, the public interest in disclosure is considerable and outweighs any such concern.  The occurrence of the Baker/Sussmann meeting is undisputed and is a notable event in the Russia collusion narrative which has dominated the public discussion since 2016.  The subsequent confirmation and description of the meeting by Mr. Baker (with the express permission of FBI counsel) diminishes any conceivable privacy interest and demonstrates the continuing and significant public interest.  S*ee, e.g*., Exhs. A-E;  *Nation Magazine v. United States Customs Service*, 71 F.3d 885, 893 (D.C. Cir. 1995) (citing *United States Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 779 (1989) and *Davis v. United States Department of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992)).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's partial motion for summary judgment and order the FBI to process Plaintiff's request.

Respectfully submitted,

JUDICIAL WATCH, INC.

/s/  *James F. Peterson*
James F. Peterson
DC Bar No. 450171
JUDICIAL WATCH, INC.
425 Third Street, S.W., Suite 800
Washington, DC 20024
Tel: (202) 646-5175
Email:  jpeterson@judicialwatch.org
*Counsel for Plaintiff*
October 1, 2019

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 1:19-cv-00573 (JEB) |
| U.S. DEPARTMENT OF JUSTICE. | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF'S RESPONSES TO DEFENDANT'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE AND PLAINTIFF'S FURTHER STATEMENT OF MATERIAL FACTS**

Plaintiff, by counsel and pursuant to Local Civil Rule 7.1(h), respectfully submits this response to Defendants' statement of material facts as to which there is no genuine dispute and statement of undisputed material facts in support of its cross-motion for summary judgment:

1. By letter dated October 5, 2018, Plaintiff Judicial Watch, Inc. ("Plaintiff") submitted a three-part Freedom of Information Act ("FOIA") request to the FBI seeking:
   1. Any and all records of communication between former FBI General Counsel James Baker and former Department of Justice attorney and current Perkins Coie Partner Michael Sussman.
   2. Any and all records created in preparation for, during, and/or pursuant to any meetings between Mr. Baker and Mr. Sussman.
   3. Any and all calendars, agendas, or similar records, either in paper or electronic format, documenting the schedule and activities of Mr. Baker.

[Def's Ex. 1-A at 1 (FOIA Request).] Plaintiff limited the request to records created between January 1, 2016, and December 31, 2016. [Id.]

**Response:**

Undisputed.

2. The FOIA request did not include a privacy waiver for Mr. Sussman nor did it include any other authorization for disclosure of information to a third party. [Seidel Decl. ¶ 5; see generally Def's Ex. 1-A (FOIA Request).]

1

**Response:**

Undisputed.

3. The FOIA request did not include proof of death of Mr. Sussman. [Seidel Decl. ¶ 5; see generally Def's Ex. 1-A (FOIA Request).]

**Response:**

Undisputed.

4. Plaintiff requested a waiver of search and duplication fees as a member of the news media. [Seidel Decl. ¶ 5.]

**Response:**

Undisputed.

5. In support of its request for a fee waiver, Plaintiff asserted, without providing any factual in support, that "disclosure of the information is in the public interest." [Def's Ex. 1-A at 2 (FOIA Request).]

**Response:**

Disputed to the extent that any additional information was necessary to establish Plaintiff's entitlement to a fee waiver.

6. By letter dated October 16, 2018, the FBI acknowledged receipt of Plaintiff's FOIA request and assigned it FOIA Request No. 1418827-000. The FBI advised Plaintiff the request for a public interest fee waiver was under consideration and for purpose of assessing fees, Plaintiff would be considered news media. [Seidel Decl. ¶ 6.]

**Response:**

Undisputed.

7. On or about March 1, 2019, Plaintiff filed the present lawsuit in the U.S. District Court for the District of Columbia. [See ECF No. 1 (Complaint).]

**Response:**

Undisputed.

8. In the parties' June 4, 2019, and June 21, 2019, Joint Status Reports, the FBI advised the Court and Plaintiff of its intent to assert a privacy *Glomar* for parts one and two of the FOIA request and that it completed the search for records responsive to part three of the request. [See ECF No. 8 and 9 (Joint Status Report and Proposed Schedule).]

**Response:**

Undisputed.

Respectfully submitted,

JUDICIAL WATCH, INC.

/s/ *James F. Peterson*
James F. Peterson
DC Bar No. 450171
JUDICIAL WATCH, INC.
425 Third Street, S.W., Suite 800
Washington, DC 20024
Tel: (202) 646-5175
Fax: (202) 646-5199
Email: jpeterson@judicialwatch.org

*Counsel for Plaintiff*

October 1, 2019