UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.,

  Plaintiff,

  v.

DEPARTMENT OF JUSTICE,

  Defendant.

Civil Action No. 19-573 (JEB)

**MEMORANDUM OPINION**

Plaintiff Judicial Watch, Inc. seeks to compel the Federal Bureau of Investigation, a component agency of Defendant Department of Justice, to produce certain records concerning contact between a private attorney, Michael Sussman, and former FBI General Counsel James Baker — records Plaintiff believes are linked to the investigation concerning Russian interference in the 2016 presidential election. In response to Judicial Watch's Freedom of Information Act request, the FBI issued a so-called "Glomar" response, refusing to confirm or deny whether it maintained any such documents, and it now moves for partial summary judgment on that position. Finding that Defendant has not sufficiently established the propriety of Glomar here, the Court will deny the Motion.

I.  **Background**

According to his own Congressional testimony, in September 2016, Baker — at the time, General Counsel for the FBI — met with Sussman, a partner at the law firm Perkins Coie. See ECF No. 14 (Plaintiff's Opp. to Def. MSJ), Exh. E (Congressional Test. of James A. Baker, Oct. 18, 2018) at 115. During this meeting, Sussman gave Baker documents relating to the ongoing

1

Russia investigation.  Id., Exh. D. (Congressional Test. of James E. Baker, Oct. 3, 2018) at 44–47, 107.  These communications prompted this lawsuit.

On October 5, 2018, Plaintiff submitted a three-part FOIA request to the FBI seeking the following records from January 1, 2016, to December 31, 2016:

> 1. Any and all records of communication between former FBI General Counsel James Baker and former Department of Justice attorney and current Perkins Coie Partner Michael Sussman.
> 2. Any and all records created in preparation for, during, and/or pursuant to any meetings between Mr. Baker and Mr. Sussman.
> 3. Any and all calendars, agendas, or similar records, either in paper or electronic format, documenting the schedule and activities of Mr. Baker.

ECF No. 12 (Def. Statement of Material Facts), Exh. 1, ¶ 1.  Defendant acknowledged the request on October 16, 2018.  Id., ¶ 6.  Several months later — having not received any records — Plaintiff filed this suit.  See ECF No. 1 (Complaint).  Arguing it should not have to disclose any records relating to Sussman, Defendant asserted a Glomar response for the first two requests and now moves for partial summary judgment as to these records.  See ECF No. 12 (Def. MSJ) at 1.

II.     **Legal Standard**

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of material fact is one that would change the outcome of the litigation.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In the event of conflicting evidence, the Court is to construe the conflicting evidence in the light most favorable to the non-moving party.  See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006).

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defs. of Wildlife v. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). In FOIA cases, the agency bears the ultimate burden of proof. See DOJ v. Tax Analysts, 492 U.S. 136, 142, n.3 (1989). The Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).

III. **Analysis**

Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (quoting Rose v. Dep't of Air Force, 495 F.2d 261, 263 (2d Cir. 1974)). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1978) (quoting NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1989)). The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds. See 5 U.S.C. § 552(a)(4)(B); DOJ v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989).

"FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Reporters Comm., 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)). "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure' . . . ." Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

Generally under FOIA, an agency must conduct a search and make requested records available unless they fall within one of the statute's nine enumerated exemptions. See 5 U.S.C. §§ 552(a)(3)(A), (b)(1)–(9). When an agency withholds documents, it typically must explain what it withheld and why. See, e.g., Vaughn v. Rosen, 484 F.2d 820, 825–28 (D.C. Cir. 1973). There is, however, an exception to this rule when "confirming or denying the existence of [certain] records would" itself reveal protected information. See Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 893 (D.C. Cir. 1995) (emphasis added).

Such a reply — i.e., refusing to confirm or deny the existence of records — is called a Glomar response, named after a Cold-War-era CIA project that the agency wished to keep confidential. See Marino v. DEA, 685 F.3d 1076, 1078 n.1 (D.C. Cir. 2012); Phillippi v. CIA, 546 F.2d 1009, 1011 (D.C. Cir. 1976). For a Glomar response to be appropriate, the Government must show that revealing the very existence of records would "cause harm cognizable under a[] FOIA exception." Wolf v. CIA, 473 F.3d 370, 374 (D.C. Cir. 2007). DOJ here invokes Exemptions 6 and 7(C).

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), while 7(C) covers "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . .

4

could reasonably be expected to constitute an unwarranted invasion of personal privacy." Id. §§ 552(b)(7), (7)(C). Here, Plaintiff does not dispute that the requested records were "compiled for law enforcement purposes" under Exemption 7(C) or that they are at least "similar files" under Exemption 6. See Pl. Opp. at 4.

As a result, the Court is left to "weigh the public interest in the release of the information against the privacy interest in nondisclosure" to determine if the "exemption[s] support[] a Glomar response." PETA v. Nat'l Inst. of Health, 745 F.3d 535, 541 (D.C. Cir. 2014) (quoting Schrecker v. DOJ, 349 F.3d 657, 661 (D.C. Cir. 2003)). The Court first identifies those privacy interests before balancing them against the public interest.

   A. Privacy Interests

The Court notes at the outset that, because it concerns law-enforcement records, "Exemption 7(C) is more protective of privacy," Am. Civil Liberties Union v. DOJ, 655 F.3d 1, 6 (D.C. Cir. 2011) (quoting U.S. Dep't of Def. v. FLRA, 510 U.S. 487, 496 n.6 (1994)), and is "somewhat broader" than Exemption 6. Judicial Watch, Inc. v. DOJ, 898 F. Supp. 2d 93, 103 (D.D.C. 2012) (quoting Roth v. DOJ, 642 F.3d 1161, 1173 (D.C. Cir. 2011)); compare 5 U.S.C. § 552(b)(7)(C) (stating Exemption 7(C) permits withholding if disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy"), with id. § 552(b)(6) (stating Exemption 6 withholding justified only if disclosure "constitute[s] a clearly unwarranted invasion of personal privacy"). Because Plaintiff concedes that all of the materials it seeks are law-enforcement records, the Court will apply the broader standard of 7(C).

It is important to remember that, at this stage, the Court is considering only whether Sussman has a privacy interest in the very existence of the requested records. That is, while he may have a privacy interest in the content of any such records, the question in evaluating a

5

Glomar response is whether disclosure of their existence would "cause harm cognizable under a[] FOIA exception." Wolf, 473 F.3d at 374.

The relevant exemptions seek "to protect individuals from a wide range of embarrassing disclosures," Rural Housing Alliance v. U.S. Dep't of Agric., 498 F.2d 73, 77 (D.C. Cir. 1974), by preventing "public disclosure of intimate details of their lives." Humane Soc'y of U.S. v. Animal & Plant Health Inspection Serv., 386 F. Supp. 3d 34, 43 (D.D.C. 2019) (quoting Rural Housing Alliance, 498 F.2d at 77). For example, courts have found the requisite invasion of privacy when records would disclose names and addresses as well as marital, parental, or employment status, see Ray, 502 U.S. at 175–76; or passport, visa, social security, and other identifying information. Judicial Watch, Inc. v. U.S. Dep't of Commerce, 83 F. Supp. 2d 105, 112 (D.D.C. 1999).

Here, the only discernible privacy interests implicated by revealing the existence of the requested records involve concealing Sussman's identity and his relationship to Baker. See Def. MSJ at 6–7. But any risk of invasion evaporated once Baker publicly testified that he had received documents from Sussman, as well as met with and spoken to him on multiple occasions in 2016. See Baker's Oct. 3 Test. at 44–47; cf. Lindsey v. FBI, 271 F. Supp. 3d 1, 8 (D.D.C. 2017) (finding that "the fact that the government has not acknowledged a potentially personal piece of information[] does not mean that the third-party's acknowledgment of that information has no bearing on" the private interests at stake; "[r]ather, this circuit has held that the third-party's acknowledgment has a substantial effect" on that analysis) (citing Citizens for Responsibility & Ethics in Wash. v. DOJ, 746 F.3d 1082, 1092 (D.C. Cir. 2014)); McMichael v. U.S. Dep't of Defense, 910 F. Supp. 2d 47, 54 n.5 (D.D.C. 2012) ("Although not determinative, the fact that individuals . . . knew about the investigation is a consideration for the Exemption

7(C) balancing test."). As the purported damage here has already come to pass, disclosure would not constitute "an unwarranted invasion of personal privacy." See 5 U.S.C. § 552(b)(7)(C). To the extent that any responsive documents may contain specific details that would cause injury or embarrassment beyond that already done, the FBI may, of course, seek to subsequently redact or withhold material, but it has shown no cognizable privacy interest in concealing these records' existence.

Beyond these general privacy interests, Glomar responses may be appropriate when the very "mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation." Schrecker, 349 F.3d at 666 (quoting Fitzgibbon v. CIA, 911 F.2d 755, 767 (D.C. Cir. 1990)). Law-enforcement agencies like the FBI thus routinely issue such responses "when responding to targeted requests for documents regarding alleged government informants, trial witnesses, subjects of investigations, or individuals who may merely be mentioned in a law enforcement record." U.S. Department of Justice, Guide to the Freedom of Information Act 32–33 (2009 ed.) (footnotes omitted); see also Roth, 642 F.3d at 1174 ("[N]ot only the targets of law-enforcement investigations, but also 'witnesses, informants, and . . . investigating agents' have a 'substantial interest' in ensuring that their relationship to the investigations 'remains secret.'") (quoting Fitzgibbon, 911 F.2d at 767).

The FBI believes here that the "public [is] likely to draw adverse inferences" about Sussman if any records mention him or acknowledge his communications with Baker. See Def. MSJ at 11. Indeed, Glomar is often justifiably used to protect government "informants" like Sussman. Roth, 642 F.3d at 1174; see also Baker's Oct. 3 Test. at 52–53 (describing Sussman as a "citizen providing information to the FBI"). Yet, Baker has already publicly disclosed Sussman's status as an informant. See Baker's Oct. 3 Test. at 44–47, 107 (revealing that he "had

one meeting when [Sussman] handed [him] information[,] . . . [and t]here may have been a follow-up meeting" and confirming that information Sussman gave "related to the Russia investigation"). According to the D.C. Circuit, "Where an informant's status has been officially confirmed, a Glomar response is unavailable, and the agency must acknowledge the existence of any responsive records it holds." Boyd v. DOJ, 475 F.3d 381, 388–89 (D.C. Cir. 2007) (citing Benavides v. DEA, 968 F.2d 1243, 1246 (D.C. Cir. 1992)).

Having so disclosed, the Government cannot now fall back on Glomar, refusing to confirm or deny whether records related to Sussman and Baker exist. See 5 U.S.C. § 552(c)(2); Benavides, 968 F.2d at 1245–46. That ship has already sailed. Even applying Exemption 7(C)'s more favorable standard for the FBI's withholding, Sussman has no *bona fide* privacy interest in concealing records memorializing his communications with Baker in 2016.

B. Balancing Interests

Ordinarily, under Exemptions 6 and 7(C), the Court would need to "weigh the public interest in the release of information against the privacy interest in nondisclosure" to determine if the "exemption[s] support[] a Glomar response." PETA, 745 F.3d at 541 (quoting Schrecker, 349 F.3d at 661). Here, however, Defendant has identified no privacy interest adequate to justify its Glomar response. No balancing is thus necessary. See, e.g., Marino, 685 F.3d at 1082 (finding because requested information was within "the public domain . . ., [the court] need not address whether the alleged 'public purpose' for the information he seeks is sufficient to outweigh exemption 7(C)'s personal privacy concerns"). Defendant must — at a minimum — confirm or deny whether the records Plaintiff is seeking exist. If they do, Defendant must either turn them over or explain the reasoning behind its withholding. See Vaughn, 484 F.2d at 825–28.

IV. **Conclusion**

For these reasons, the Court will deny Defendant's Motion for Partial Summary Judgment. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: November 26, 2019